**COURT OF APPEALS**
**DOCKET NO. 19-5238**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

KATORIA S. WILLIAMS,
DEMETRI M. FAULKNER,

Plaintiffs,

Lucinda Jones; Valerie V. Vie Attorneys – Appellants.

v.

Shelby County School System; Marjorie N. Douglas,

Defendants/Appellees.

---

On Appeal from the United States District Court
Western District of Tennessee
Civil Action File Number 2:17-cv-02284-TLP-cgc

---

**BRIEF OF ATTORNEYS/APPELLANTS**

---

SUBMITTED BY:

Lucinda Jones
P. O. Box 442111
DETROIT, MICHIGAN  48244
313-559-5444
Attorney for Appellants

# CORPORATE DISCLOSURE STATEMENT

Pursuant to 6th Cir. R. 26.1, Attorney-Appellant, Lucinda Jones, makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly-owned corporation?   If the   answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    No.


2.  Is there a publicly-owned corporation, not a party to the appeal that has a financial interest in the outcome?   If the answer is YES, list the identity of such corporation and the nature of the financial interest:

    No.


/s/ Lucinda Jones               May 13, 2019
Attorney for Appellants

# CORPORATE DISCLOSURE STATEMENT

Pursuant to 6th Cir. R. 26.1, Attorney-Appellant, Valerie Vie, makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly-owned corporation?   If the     answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

    No.

2.  Is there a publicly-owned corporation, not a party to the appeal that has a financial interest in the outcome?   If the answer is YES, list the identity of such corporation and the nature of the financial interest:

    No.


/s/ Lucinda Jones                                          May 13, 2019
Attorney for Appellants

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ATTORNEY JONES ............ ii

CORPORATE DISCLOSURE STATEMENT ATTORNEY VIE.................. iii

TABLE OF CONTENTS.................................................................. iv

TABLE OF AUTHORITIES .......................................................... v

STATEMENT IN SUPPORT OF ORAL ARGUMENT ................................. 1

STATEMENT OF JURISDICTION.................................................. 2

STATEMENT OF ISSUES PRESENTED........................................ 3

STATEMENT OF THE CASE AND RELEVANT FACTS .......................... 4

    I.  COURSE OF PROCEEDINGS AND DISPOSITION IN THE
       THE DISTRICT COURT  ………………………………………….6

    II. STATEMENT OF STANDARD OF REVIEW  …………………14

SUMMARY OF ARGUMENT ....................................................... 14

ARGUMENT AND CITATIONS OF AUTHORITY ................................... 15

SUMMARY AND RELIEF............................................................ 45

CERTIFICATE OF COMPLIANCE.............................................. 47

CERTIFICATE OF SERVICE ...................................................... 48

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ....... 49

# TABLE OF AUTHORITIES

**Case Citation**                                                                                  **Page**

An-Ti Chai v. Michigan Technological University,
493 F.Supp. 1137 (W.D. Mich., 1980) ............................................................. 23

Caldwell v. Rowland,
932 F.Supp. 1018, 1021 (E.D. Tenn., 1996)...................................................... 35

Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., ........................ 14
753 F.2d 1354, 1356 (6th Cir. 1985)

Christiansburg Garment Co. v. EEOC,
434 U.S. 412 421 (1978) ……………………………………………............16, 39

Davis v. Robert,
192 F.Supp.3d 847, 856 (E.D. Mich., 2016)..................................................... 23

Delaware State College v. Ricks,
449 U.S. 250, 258, 101 S.Ct. 498, 66, L.Ed.2d 431 (1980)……………........33

Dixon v. Anderson,
928 F.2d 212, 216 (6th Cir. 1991)……………………………………..........32, 35

Dyer v. Radcliffe,
169 F.Supp.2d 770 (S.D. Ohio 2001) ............................................................... 32

E.E.O.C. v. Penton Indus. Pub. Co., Inc.,
851 F.2d 835, 838 (6th Cir. 1988)..................................................................... 36

Givhan v. Western Line Consolidated School District,
439 U.S. 410, 99.S.Ct. 693, 58 L.ED.2d 619 (1979)....................................... 24

Gutzwiller v. Fenk,
860 F.2d 1317, 1328 (6th Cir. 1988)……………………………………….18, 27

Hall v. Ledex, Inc.,
669 F.2d 397, 398 (6th Cir. 1982)...................................................................... 33

In re Ruben,
825 F.2d 977 984 (6th Cir. 1987)…………………………………………….. 39

Jenkins v. Rock Hill Local School Dist.,
513 F.3d 580, 587 (6th Cir. 2008)...................................................................... 23

Jewell v. Shelby Cnty. Gov't and Oldham,
No. 13-2048-STA-dkv, p. 8 (W.D. Tenn., 2013) ............................................. 32

Jones v. The Continental Corp.,
789 F.2d 1225, 1232 (6th Cir. 1986)…………………………………………., 39

Matthews, et al. v. Storgion, M.D., et al,
335 F.Supp.2d 878, 888 (W.D. Tenn, 2004) ...................................................... 26

Morreim v. Univ. Of Tenn.,
No. 12-2891-STA-dkv, p. 30 (W.D. Tenn., 2013)………………......17, 27, 32

Pickering v. Board of Education,
391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)....................................... 23

Riddle, et al v. Egensperger,
266 F.3d 542, 547 (6th Cir. 2001)………………………......14, 15, 39, 40, 41, 45

Ross v. City of Memphis,
394 F.Supp.2d 1024, 035 (W.D. Tenn., 2005)        ……………………..17, 18

Ruben v. Warren City Sch.,
825 F.2d 977, 984 (6th Cir. 1987)...................................................................... 39

Smith v. City of Salem, Ohio,
378 F.3d 566 (6th Cir. 2004) ............................................................................ 21

Smith v. Smythe-Cramer Co.,
754 F.2d 180, 183 (6th Cir. 1985)...................................................................... 16

United States v. Wallace,
964 F.2d 1214, 1220 (D.C. Cir. 1992) ................................................................ 39

Wagner v. City of Memphis,
971 F.Supp. 308, 318-19 (W.D.Tenn.1997) ..................................................... 18

Wayne v. Village of Sebring,
36 F.3d 517, 530 (6th Cir. 1994)………………………………………………………39

# CONSTITUTIONS, STATUTES, COURT RULES

**Statutes**                                                                **Page**

28 U.S.C. § 1291…………………………………………………………......2

28 U.S.C. § 1927……………………………………………… 5, 14, 41

42 U.S.C. § 1981…………………………………………………,..8, 38

42 U.S.C. § 1981a..……………………………………………………38

42 U.S.C. § 1982………………………………………………………38

42 U.S.C. § 1983……………………………………………4, 8, 16, .38

42 U.S.C. § 1985………………………………………………………38

42 U.S.C. § 1986………………………………………………………38

42 U.S.C. § 1988………………………………………………5, 38

42 U.S.C. § 1988(b)………………………………………………38

F.R.C.P. § 30(d)(1) ……………………………………………44

T.C.A. § 20-12-119 ……………………………………………5, 11

T.C.A. § 28-3-104(a)(3) ……………………………………………32

T.C.A. § 28-3-105 ……………………………………………34, 35

T.C.A. § 28-3-109(a)(3) ……………………………………………34, 35

T.C.A. § 29-12-119 ……………………………………………11

T.C.A. § 29-20-113 …………………………………………………………11,13, 14

T.C.A. §29-39-102………………………………………………………………24

Title VII………………………………………………………………………8, 12

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Petitioner, Attorney-Appellant, Lucinda Jones, hereby requests that this Court grant oral argument in this matter. Oral arguments are necessary to resolve any questions the Court may have regarding the complex facts and issues in the case, and to allow Appellants to more fully develop the relief they are requesting herein.

For example, evidence, not in the electronic record, but that was collected during the discovery period, may need to be introduced to answer questions the Court may have.

## <u>STATEMENT OF JURISDICTION</u>

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291, which provides jurisdiction for appeals from final decisions of district courts. The District Court granted Douglas's motion for attorney fees on February 7, 2019 (R. 163, ID# 1239). The Appellants timely filed her notice of appeal within 30 days thereafter, on March 11, 2019. (R. 166 ID# 1294).

## <u>STATEMENT OF ISSUES</u>

ISSUE I:     The District Court Erred In Finding Plaintiffs' Attorneys' Actions Frivolous.

ISSUE II:    The District Court Abused Its Discretion in Awarding Attorney Fees to Douglas Because Plaintiffs' Claims Were Not Frivolous, Unreasonable Or Without Foundation.

ISSUE III:   The Process The District Court Took In Reaching Its Findings Was Unfair To Plaintiffs

**STATEMENT OF THE CASE AND RELEVENT FACTS**

In this employment action, Plaintiffs, Katoria S. Williams and Demetri M. Faulkner, filed a 42 U.S.C. 1983 lawsuit against Shelby County School System (hereinafter, "SCSS") and Marjorie Douglas, in her official and individual capacity (R. 37, Page ID# 383, ¶8).

Plaintiffs alleged Douglas subjected them to a hostile work environment, treated them differently than their Caucasian counterparts, and retaliated against them because they are black and because they complained that Douglas was engaged in discriminatory activity at the workplace, against them and other African Americans (R. 37, Page ID# 385, ¶19; Page ID# 387, ¶¶30-31; Page ID# 392, ¶67; Page ID# 394, ¶77; Page ID# 395, ¶¶83-84, and Page ID# 398, ¶102).

Plaintiffs alleged SCSS was aware of Douglas's actions, and they failed to correct her conduct and stop the discriminatory activity, thereby, creating customs and policies that constituted deliberate indifference to Plaintiffs' constitutional rights and the rights of other African Americans (R. 37, Page ID# 389, ¶¶45-46; Page ID# 396, ¶¶91-92; Page ID# 398, ¶¶103-104; Page ID# 402, ¶¶117-118, and Page ID# 409, ¶¶142-143).

On October 3, 2017, Douglas filed a Motion to Dismiss the 1983 claim, against her, on the ground the Complaint failed to state a claim for relief (R. 42-1,

Page ID# 448). On May 2, 2018, the Court granted Douglas's Motion (R. 108, Page ID# 820). The Court found all of Williams' and Faulkner's claims untimely or failed to state a claim (Id., Page ID# 833).

On May 16, 2018, Douglas filed her Motion for Attorney's Fees and Expenses, seeking recovery under 42 U.S.C. 1988, 28 U.S.C. §1927, Tennessee Code Annotated §20-12-119, and the Court's inherent authority (R. 110-1, Page ID# 842).

On February, 7, 2019, the District Court awarded 1927 attorneys' fees sanctions against Plaintiffs' attorneys, Lucinda Jones and Valerie V. Vie, concluding attorneys' actions were frivolous because they were unable to make a good faith argument for application of the continuing violations doctrine (R. 163, Page ID# 1246). Additionally, the Court concluded Plaintiffs' attorneys knowingly and intentionally multiplied the proceedings with vexation (Id., Page ID# 1251).

Attorneys, Lucinda Jones and Valerie V. Vie (hereinafter, "Attorneys") now appeal from the District Court's findings.

# I. COURSE OF PROCEEDINGS AND DISPOSITION IN THE DISTRICT COURT

## A. Pertinent Background Information

At the time of the actions giving rise to this lawsuit, Plaintiffs worked for the Division of Federal Programs at Shelby County Schools (hereinafter, "SCS"). One position under the umbrella of the Federal Programs was Title I Facilitator. Due to merging of the Memphis City Schools and SCS, the Federal Programs was restructured as of July 1, 2013, and, as a result, the Title I Facilitator position was reclassified to Federal Programs Advisor (hereinafter "FPA") (R. 43, Page ID# 452, ¶12). The FPA is a one year contract that is federally funded and renewable each year (R. 37, Page ID# 384, ¶15 and R. 44-2, Page ID# 500, ¶¶16-17). At all times, herein, Douglas was the Director of the Federal Programs (R. 44-5, Page Id# 508, line 7).

*Williams*, a twenty-year educator, began her employment with SCS in 2008, as a teacher (R. 37, Page ID# 384, ¶12). Williams was promoted to Title I Facilitator, around July 2012 (R. 43, Page ID# 452, ¶12; RE 44-1, Page ID# 480). In July 2013, she transitioned to the FPA position under a one year contract that was renewable each year, and under Douglas's supervision (R. 37, Page ID# 384, ¶¶13-15). Williams' contract was scheduled to renew before the end of June 2014; however, Douglas terminated it at the end of December 2013 (Id., Page ID# 391,

¶60). Williams was told that her FPA position was being excessed because the Federal Programs no longer needed a Program Advisor (Id., Page ID# 392, 61-63).

After Williams' termination from the FPA position, she was assigned to classroom teaching (R. 44-3, Page ID# 504). As a result, she suffered a decrease in her pay (R. 37-1, Page ID# 424). Williams ended her employment with SCS in May 2015 (R. 44-1, Page ID# 481, para. 1). She was a tenured employee (R. 37, Page ID# 384, ¶16).

*Faulkner*, a long time educator, herself, began her employment with Memphis City Schools in 2002, as a Math Teacher and was hired by the SCS in September 2007 (R. 37, Page ID# 393, ¶72). Like Williams, Faulkner was promoted to Title I Facilitator position (R. 44-1, Page ID# 481, para. 2). In July 2013, Faulkner, too, transitioned to the FPA position under the federally funded contract (R. 37, Page 394, ¶73). Faulkner expected her FPA contract to renew before it ended in June 2014 (R. 44-1, Page ID# 481, para. 3). After Faulkner's termination from the FPA position, she was reassigned to the position of PL Coach, where she, too, suffered a decrease in pay (R. 44-1, Page ID# 481, para. 3 and 482, ¶1). She ended her employment with SCS in September 2017. (Id, Page ID# 482). Faulkner was a tenured employee (R. 37, Page ID# 394, ¶74).

On April 25, 2017, Williams and Faulkner initially sued Defendants under Title VII and 42 U.S.C. § 1981 (R. 1).  By way of amendment, on September 19, 2017, Plaintiffs brought the instant 42 U.S.C. § 1983 action against Defendants, Shelby County School System and Marjorie Douglas (in her official and individual capacity) (R. 37). They continued their Title VII claim.

Plaintiffs' causes of action allege Douglas subjected them to a hostile work environment, treated them differently than their Caucasian counterparts, and retaliated against them because they are black and because they complained that Douglas was engaged in discriminatory activity at the workplace, against them and other African Americans (R. 37, Page ID# 402, ¶¶ 116-124 and Page ID# 408, ¶¶141-150).

Williams also brought state causes of action for Emotional Distress and Inducement to Breach Contract (Id., Page ID# 404, ¶¶125-129).  Faulkner brought state causes of action for Emotional Distress and Wrongful Dismissal of Tenured Teacher (Id., Page ID# 411, ¶¶151-155).

Plaintiffs' allegations supporting their causes of actions are specifically set forth below, in their Argument and Citations of Authority.

**B.     Discovery Activity by Plaintiffs and Defendant**

On July 24, 2017, the parties' attorneys met to propose a discovery plan (R. 25, Page ID# 248).   The parties agreed to propound 35 Admissions (Id.).   The attorneys caused the Report to be filed with the District Court on August 2, 2017 (Id.).  The attorneys representing Douglas appeared as her attorney on August 14, 2017 (R. 26, Page ID# 253).

On August 14, 2017, the District Court held a Telephonic Scheduling Conference to discuss the parties' discovery plan of July 24, 2017 (R. 28, page 1). The Court signed the Scheduling Order on August 17, 2017 (R. 32, Page ID# 324). The signed Order did not include the attorneys' stipulation to 35 Admissions.

*Douglas* – On September 21, 2017, Douglas propounded her First Set of Interrogatories and Request for Production of Documents to Williams and Faulkner, (R. 41, Page ID# 431). Plaintiffs answered fully and in a timely manner, on October 30, 2017 (R. 45, Page ID# 509 and R. 46, Page ID# 511).

On January 22, 2018, Douglas noticed Williams and Faulkner to take their video-taped depositions (R. 65, Page ID# 635 and R. 66, Page ID# 637). Also, on January 23, 2018, SCSS noticed Williams and Faulkner to take their video-taped depositions (R. 69, Page ID# 643; R. 70, Page ID# 646).

On January 23, 2018, Douglas propounded 190 Admissions to Williams (R. 68, Page ID# 641). And, on January 24, 2018, Douglas propounded 137 Admissions to Faulkner (R. 71, Page ID# 649).

On January 30, 2018, Plaintiffs' filed an Emergency Motion for Protective Order, asking the Court to restrict Douglas's Admissions request to 35 (R. 74, Page ID# 653). Magistrate Court Judge, Charmiane Claxton, denied the Motion (R. 95, Page ID# 787).

Plaintiffs timely answered the 327 Admissions, on February 14, 2018 (R. 86, Page ID# 715 and R. 87, Page ID# 717).

Douglas's attorney and SCSS's attorney deposed Plaintiffs on March 12, 2018 through March 15, 2018. The depositions were video-taped.

*Williams and Faulkner* – On October 30, 2017, Faulkner propounded her First Interrogatories to Marjorie Douglas (R. 47, Page ID# 513), and Williams propounded her First Request for Production of Documents to Marjorie Douglas (R. 48, Page ID# 515).

## C.    Motion to Dismiss – by Douglas

On October 3, 2017, Douglas filed her Motion to Dismiss Plaintiffs' 1983 lawsuit for Failure to State a Claim (R. 42-1, Page ID# 435). She argued Plaintiffs' claims failed to plead sufficient facts to state a claim for relief and the

causes of action are barred by the applicable statute of limitations (Id., Page ID# 448). Douglas asked the Court to "dismiss the case against her and permit her to submit a Motion for Attorneys' Fees and Cost pursuant to T.C.A. §29-12-119 (Id.). Douglas did not assert that Plaintiffs' lawsuit was frivolous, nor did she assert that Plaintiffs and their Attorneys multiplied the proceedings.

Plaintiffs timely responded to Douglas's Motion to Dismiss on October 17, 2107 (R. 44-1, Page ID# 480).

On October 30, 2017, Douglas replied to Plaintiffs' Response to her Motion to Dismiss (R. 49, Page ID# 517). Douglas asked the Court to dismiss the 1983 lawsuit because Plaintiff failed to state a claim (Id., Page ID# 526). Douglas further asked the Court to permit her to submit a Motion for Attorneys Fees and Costs pursuant to TCA § 29-12-119 and § 29-20-113 and any other applicable law." (Id.). Douglas did not assert that Plaintiffs' lawsuit was frivolous, nor did she assert that Plaintiffs and their Attorneys multiplied the proceedings.

On February 26, 2018, Judge Jon P. McCalla, who had presided over the lawsuit to this date, transferred the case to Judge Thomas L. Parker (R. 94, Page ID# 786).

Seven months later, on May 2, 2018, Judge Parker granted Douglas's Motion to Dismiss, on the ground Plaintiffs' claims are untimely or fail to state a

claim (R. 108, Page ID# 833).[1]  Judge Parker did not find that Plaintiffs and their

Attorneys filed a frivolous lawsuit.  Nor did he find that Attorneys multiplied the

proceedings. Further, Judge Parker did not find that Attorneys acted in bad faith

(R. 163, Page ID# 1245).

The Court did not have oral arguments prior to rendering its findings.

## D.    Douglas's Motion for Attorney Fees

In Douglas's May 16, 2018 Motion for Attorney Fees, she requested

$72,703.00, plus $4,700.37, totaling $77,403.37 in expenses (R. 110-1, Page ID#

840, para. 2).  Here, it is the first time Douglas alleged Plaintiffs' 1983 lawsuit is

frivolous. Id.[2]

Plaintiffs responded to Douglas's Motion in a timely manner (R. 118, Page

ID# 875).

On September 14, 2018, Attorney O'Neal filed Plaintiffs' Response in

Opposition to Douglas's Motion for Attorney Fees (R. 144, Page ID# 1128).  On

October 3, 2018, the Court held a Status Conference.  O'Neal appeared on behalf

---

[1] Ultimately, the parties stipulated to dismiss the 1983 claim against SCSS (R. 123, Page ID#892).  The parties settled the Title VII lawsuit (RE 140, Page ID# 1118).

[2] On May 16, 2018, Douglas's new attorney, Robert O. Binkley, entered his Notice of Appearance on behalf of Douglas (R. 109, Page ID# 834).  Darrell J. O'Neal entered his Notice of Appearance on behalf of Plaintiffs, substituting for Valerie V. Vie (R. 122, Page ID# 890).

of Plaintiffs.  Judge Parker advised O'Neal that he was working on an Order on the Motion for Attorney Fees (R. 148, page 1).

On November 13, 2018, the Court held a Telephonic Status Conference, and Judge Parker advised O'Neal, representing Plaintiffs, that he would award attorneys fees to Douglas (R. 151, Page 1).  Judge Parker informed O'Neal he could respond to what is reasonable attorney fees (Id.).

On November 14, 2018, Douglas filed sealed documents of billing statements and additional billing statements (Sealed R. 153, includes 34 pages; Seal R. 154, includes 6 pages).  Douglas requested attorneys' fees in the amount of $77,403.37 and a final request for $92,685.69. (Id.):

On November 30, 2018, Plaintiffs filed Objections to Douglas's Attorney Fee Request as Unreasonable, and a Request to Stay This Matter Pending A Ruling Of  The Constitutionality of Tennessee Code Annotated §29-20-113 (R. 155, Page ID# 1198).  During the November 13 Telephonic Conference, O'Neal requested that he be permitted to file The Request to Stay (R. 151, page ).

On February 7, 2019, the Court signed an Order Granting In Part and Denying In Part Defendant's Motion for Attorney Fees (R. 163, Page ID# 1239). The Court awarded total fees to Douglas in the amount of $47,811.50 ($39,842.92

against Jones and Vie under 28 U.S.C. § 1927, and $7,968.58 against Plaintiffs pursuant to *TCA § 29-20-113(a)* (R. 163, Page ID# 1255). [3]

## II.  STATEMENT OF STANDARD OF REVIEW

"The standard of review on appeal is whether the district court abused its discretion in awarding attorneys fees." *Riddle, et al v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2000), citing *In re Ruben*, 825 F.2d 977 984 (6th Cir. 1987).  Abuse of discretion occurs where "[a] district court . . . relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co.,* 753 F.2d 1354, 1356 (6th Cir. 1985).  The District Court's record must be reviewed to determine whether its finding is factually supported.  *Riddle, et al v. Egensperger*, 266 F.3d at 547.

Here, the District Court relied on erroneous findings of facts and improperly applied the law.

## SUMMARY OF ARGUMENT

The 1983 lawsuit Attorneys filed on behalf of their clients is not frivolous, not unreasonable nor without foundation.

---

[3] Additionally, the Court denied Plaintiffs' Motion to Certify Constitutionality of *Tenn. Code Ann. §29-20-113* (Id.), which was filed on December 15, 2018, (R. 158).

The District Court finding Attorneys "actions frivolous because they were unable to make a good faith argument for application of the continuing violations doctrine" (RE 163, Page ID# 1246), is not supported by facts in the record and contradicts the Sixth Circuit standard concerning whether a lawsuit is frivolous.

The District Court's reasoning for awarding attorneys' fees, on the ground Attorneys "knowingly and intentionally multiplied these proceedings," (R. 163, ID# 1251), also, is not supported by the record, and, it not congruent with Sixth Circuit standards.

Respectfully, the District Court did not identify conduct of attorneys that rose to the level of frivolity, resulting in a multiplication of the proceedings; it, nevertheless, awarded attorneys' fees sanctions against Attorneys. This was error.

## ARGUMENT AND CITATIONS OF AUTHORITY

**ISSUE 1:     The District Court Erred In Finding Plaintiffs' Attorneys' Actions' Frivolous.**

The District Court found Plaintiffs' Attorneys' Actions Frivolous because they were unable to make a good faith argument for application of the continuing violations doctrine. The Court concluded "none of the claims against Douglas could withstand the motion to dismiss" (R. 163, Page ID# 1247, para. 1).

The Sixth Circuit holds that the mere fact that an action is found without merit does not amount to frivolity. *Riddle, et al v. Egensperger*, 266 F.3d at 550.

The Supreme Court cautioned that District Courts resist engaging in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

The Court further wrote:

> "…This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not merge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit. (Id.).

The standard for whether a 1983 lawsuit is frivolous, unreasonable or groundless, the Court must determine the Plaintiff's basis for filing the lawsuit. *Christianburg*, 434 U.S. at 421, citing *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985).

## A.    The Basis of Plaintiffs' 42 U.S.C. § 1983 Lawsuit

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the [United States] Constitution or laws." 42 U.S.C. § 1983.

To establish a prima facie case under § 1983, a plaintiff must prove 1) that the government action occurred "under color of law" and (2) that the action is a deprivation of a constitutional right or federal statutory right. *Ross v. City of Memphis*, 394 F.Supp.2d 1024, 1035 (W.D. Tenn., 2005).

Douglas does not dispute that she was acting under color of law at the time of the events in this lawsuit (R. 37, Page ID# 383, ¶8; R. 43, Page ID# 452, ¶8).

1.    **Williams' 1983 Claim**.

   i.    <u>**Fourteenth Amendment Due Process – life and liberty**</u>

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty and property, and those who seek to invoke its procedural protections must establish that one of these interests is at stake."  Id., at p. 1037.

The liberty interest Williams invoked is not being terminated from governmental employment for a constitutionally impermissible purpose, based on her race and because she complained that Douglas discriminated against her and other African Americans (R. 44-1, Page ID# 485, para. 4), where Williams Williams cited *Morreim v. Univ. Of Tenn.*, No. 12-2891-STA-dkv, p. 30 (W.D. Tenn., 2013), for the proposition that:

> "…an adverse tenure decision based on a protected characteristic such as race constitutes an arbitrary and capricious deprivation of the

individual's liberty interest in not being terminated from governmental employment for a constitutionally impermissible purpose Id., citing *Gutzwiller v. Fenk*, 860 F.2d 1317, 1328 (6th Cir. 1988), holding: "It is possible for a Plaintiff to state a substantive due process claim based on a violation of the Equal Protection Clause." Id. at 32.

Williams asserted a substantive due process violation. She alleged that she was a tenured employee and as a result of her termination, her pay decreased, and she sustained a substantial and tangible harm and material change to her tenured status (R. 37, Page ID# 384, ¶16; R. 44-1, Page ID# 482, para. 1, and Page ID# 483, para. 2).

Williams acknowledges that she was informed that her FPA position would be excessed. However, the notice and the process leading to Williams' termination amounted to a sham.

A "sham" proceeding in which the outcome of the hearing is predetermined does not meet the requirements of a pre-termination hearing and does not afford due process. *Ross v. City of Memphis* 394 F.Supp.2d at 1038, citing *Wagner v. City of Memphis*, 971 F.Supp. 308, 318-19 (W.D.Tenn.1997). The Court, there, stated "sham proceedings "eviscerate the protection afforded to municipal employees under the Due Process Clause of the Fourteenth Amendment." Id. at 319.

Williams believes Douglas had planned to terminate her from the FPA position because of her race and because she complained that she and other African Americans were being discriminated against. In fact, she reported to Douglas's supervisor, Roderick Richmond, that Douglas singled her out and was trying to get rid of her (R. 37, Page ID# 390, ¶¶47-49).

To accomplish Williams' termination in a way that would not be suspect, Douglas created a hostile environment where she systematically devaluated Williams' job performance to justify terminating her from the FPA position.

Douglas placed Williams and other blacks on a "shit list" and "black list" for mistreatment (Id., Page ID# 385, ¶¶20-21), and she carried out her mistreatment. Douglas's devaluation of Williams' job performance included taking assignments away from her and giving them to someone else to do; she would not allow Williams to leave her office to perform duties that were assigned to her, but she permitted Caucasians to leave their office to perform their assigned duties; she threatened Williams with negative evaluations, despite the fact that her (Williams') immediate supervisor, James Aldinger, did not have problems with her job performance; she routinely shut Williams out of advisors' meetings. (Id., Page ID# 385, ¶¶22-23; Page ID# 386, ¶¶27-29).

Further devaluating Williams' performance to justify terminating her from the FPA position, Douglas hired Patty Wright, Caucasian, to the position of FPA, a less senior advisor than Williams and less experienced, with a higher salary than Williams (Id., Page ID# 388, ¶40; Page ID# 391, ¶59; Page ID# 392, ¶64, and Page ID# 424). Douglas hired Wright, despite Douglas informing Williams that her FPA position was being excessed because the position was no longer needed (R. 37, Page ID# 391, ¶¶60-63).

After Plaintiffs' termination, on or about July 30, 2014, Douglas reposted the FPA position, to be filled (R.44-2, Page ID# 500, ¶12). Williams was never rehired to the FPA position.

Williams did not receive due process.

### ii.    Fourteenth Amendment Equal Protection

Williams Count VII sets forth a cause of action against SCSS and Douglas for violation of her Equal Protection rights, by treating her unequally, as compared to Caucasian employees, on account of her race and because she complained that Douglas discriminated against her and other African Americans (R. 37, Page ID# 402, ¶¶117-118; Page ID# 403, ¶¶ 121-122).

Individuals have a right, protected by the Equal Protection clause of the Fourteenth Amendment, to be free from discrimination on the basis of race in

public employment. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To establish her claim, Williams must show that she suffered purposeful or intentional discrimination on the basis of her race. Id.

The disparate treatment that Williams alleged is set forth in the following paragraphs of her 1983 Complaint: (1) Douglas would not permit Williams to leave her office to perform duties that were assigned to her, while she permitted Caucasian employees to leave their office and work (R. 37, Page ID# 386, ¶ 23). (2) Douglas took an office desk that was for Williams' office use and gave it to a Caucasian employee, leaving Williams with a small table inadequate to hold her work materials (Id., Page ID# 387, ¶32). (3) Caucasian employees were issued business cards, but the "hit list" blacks were not issued business cards (Id., Page ID# 388, ¶35). (4) Caucasian employees were issued reimbursement for mileage and other requisitions before black employees were issued theirs (Id., Page ID 388, ¶37). (5) Williams was routinely informed that her reimbursements were held up and or needed to be corrected (Id., Page ID# 388, ¶38). (6) Douglas ensured that Caucasian employees were paid more than the black employees and received raises over African American employees (Id., Page ID# 388, ¶39). (7) Douglas hired Patty Wright, Caucasian, for the same position, with a higher salary than Williams, who was less senior (Id., Page ID# 388, ¶40). (8) Leslie Grave, Caucasian, was not

subject to elimination from her FPA position, even though she was less experienced than Williams (Id, Page ID# 424). (9) Douglas constantly delayed Williams' mileage, resulting in late submission and reimbursement and systematically held black employees' requisitions and reimbursements (Id., Page ID# 389, ¶43-44).

By all indications, Williams was scheduled to continue her contract through the school year, 2014. Two weeks prior to the time she was informed that she would be terminated, Williams' supervisor, James Aldinger, wrote Williams' action plan with goals and expectations for the remainder of the 2014 school year (Id., Page ID# 391, ¶¶54-56). Williams was a good-productive employee and had never had a write up or adverse disciplinary report to her file, until she started working under Douglas's supervision (Id., Page ID# 385, ¶¶17-18).

With this backdrop, it was reasonable for Williams to believe that Douglas's treatment of her was disparate, because she is black and complained of discrimination.

### iii.   Fourteenth Amendment Free Speech Retaliation

Williams Count VIII sets forth a cause of action against SCSS and Douglas for violation of her First Amendment Free Speech from Retaliation (R. 37, Page ID# 402, ¶117-118; Page ID# 404, ¶¶ 123-124).

"To proceed under a retaliation theory, a plaintiff must demonstrate: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Davis v. Roberts, 193* F.Supp.3d 847, (E.D. Mich., 2016).

"Actions taken against individuals that do not constitute constitutional violations themselves may nonetheless be unconstitutional "if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Id. at 856, citing *Jenkins v. Rock Hill Local School Dist*., 513 F.3d 580, 587 (6th Cir., 2008), for the proposition that the right to criticize public officials is clearly protected by the First Amendment."

"Public employees are free to criticize their employers so long as their statements do not impede the regular operation of the business." *An-Ti Chai v. Michigan Technological University*, 493 F.Supp. 1137 (W.D. Mich., 1980), citing *Pickering v. Board of Education* 391 U.S. 563, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). Furthermore, First Amendment rights attach even though the statements were privately made, rather than publicly expressed. *An-Ti* 493 F.Supp

at 1558, citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

Douglas was the Director of the Federal Programs. Williams complained to Richmond about Douglas's mistreatment of her. Shortly after Williams complained to Richmond that she believed Douglas would get rid of her, she received notice of her termination from the FPA position.

From the facts, here, Williams' belief that her termination was retaliatory based on her speech is reasonable.

### iv.    <u>Emotional Distress</u>

Williams Count IX sets forth a cause of action against Douglas for Emotional Distress (R. 37, Page ID# 404, ¶¶ 125-126).

Under Tennessee, to establish a claim for intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated by civilized society; and, (3) the defendant's conduct resulted in serious mental injury to the plaintiff. *T.C.A. §29-39-102*.

The cumulative actions of Douglas above caused Williams emotional distress (R. 37, Page ID# 393, ¶¶68-69). Other actions of Douglas causing Williams emotional distress include Williams being on Douglas's "shit list and co-

workers no longer wanting to be around Williams because she was on the list (Id., Page ID# 385, ¶21). Douglas brought staff members into meetings between Douglas and Williams, who had nothing to do with the meeting, for the purpose of harassing Williams (Id., Page ID# 386, ¶24).

Immediately after Douglas terminated Williams, she asked Douglas for a meeting; instead of meeting with her, Douglas slammed the door in Williams' face (Id., Page ID# 391 ¶¶57-58).

Douglas's cumulative actions were detriment to Williams' emotional, physical, and mental well-being (Id., Page ID# 393, ¶¶68-69). Consequently, Williams sought therapy treatment for her continual distress (Id.).

### v.  <u>Inducement to Breach Contract</u>

Williams Count X sets forth a cause of action against Douglas for Inducement of Breach of Contract (R. 37, Page ID# 405, ¶¶ 128-129).

To make a *prima facie* case for inducement to breach a contract, the Plaintiff must establish the following elements: (1) that a legal contract existed; (2) that the defendant was aware of the contract; (3) the defendant intended to induce a breach of contract; (4) the defendant acted with malice; (5) a breach of the contract occurred; (6) the breach was a proximate result of the defendant's

conduct; and (7) the breach injured the plaintiff.  <u>Matthews, et. al. v. Storgion, M.D., et al</u>, 335 F.Supp.2d 878, 888 (W.D. Tenn, 2004).

Williams' Complaint established these elements.  At the time Douglas terminated Williams, she was completing a one-year contract (R. 37, Page ID# 384, ¶¶ 12-15).  Secondly, Ms. Douglas was aware that the contract existed, as she was the Executive Director of Federal Programs.

Thirdly, two-weeks prior to November 2013, when Williams was informed that she would be terminated from her FPA position at the end of December 2013, her supervisor, James Aldinger, had executed her action plan and goals for the remainder of the 2014 school year (R. 37, Page ID 391, ¶¶55-56).  Additionally, Aldinger was never informed that Williams would be terminated (Id., ¶54). In fact, Williams was on schedule to continue working as a FPA.  Douglas hired Patty Wright around the time Douglas notified Williams' of her termination.  Shortly after Williams complained to Richmond, Douglas notified her that she would be excessed from the FPA position.

Williams established the requisite elements for this claim.

2.    **Faulkner's Claims**.

    i.    <u>**Fourteenth Amendment Due Process – Life, Liberty**</u>.

Faulkner's Counts V and VI set forth a cause of action against SCSS and Douglas for violation of her liberty interest (R 37, Page ID# 408, ¶141; Page ID# 409, ¶¶142-145).

Like Williams, the liberty interest Faulkner invoked is not being terminated from governmental employment for a constitutionally impermissible purpose. *Morreim v. Univ. Of Tenn.*, No. 12-2891-STA-dkv at p. 30 (W.D. Tenn., 2013), citing *Gutzwiller*, 860 F.2d at 1328, for the proposition that Faulkner had a protected interest in her tenured status as a government employer.

Like Williams, the notice Faulkner received of her termination was a sham. She, too, believes Douglas planned to terminate her from the FPA position because of her race and because she complained that she and other African Americans were discriminated against (R. 37, Page ID# 398, ¶102).

Douglas created a hostile environment where she systemically devaluated Faulkner's job performance, to justify terminating her from the FPA position and to justify not renewing her FPA contract.

Like Williams, Faulkner was on Douglas's "shit list" and "black list" for mistreatment (Id., Page ID# 394, ¶78).  Douglas threatened Faulkner with negative

performance appraisals, and she (Douglas) instructed Deborah Currie to give her (Faulkner) a poor performance appraisal (Id., Page ID# 394, ¶79; Page ID# 395, ¶82). Douglas would not issue Faulkner's assignments and directions to her in writing, but she issued them verbally; however, she issued the Caucasian employees their assignments in writing and after Faulkner followed the verbal directions given to her by Douglas, Douglas would say she didn't tell Faulkner that (Id., Page ID# 396, ¶¶89-90). This was to make it appear that Faulkner did not follow commands. This, in turn, would justify the marginal ratings Douglas assessed against Faulkner's performance, which would rationalize Douglas terminating Faulkner from the FPA position and not renew her contract.

When Douglas realized Bill Morris, Caucasian, was paid less than Faulkner, she paid him a higher salary, despite the fact that he possessed fewer degrees and had less time with the school system than Faulkner (Id., ¶¶86-88).

Faulkner complained to James Aldinger about the differential treatment and Faulkner filed discriminatory charges with EEOC, on May 8, 2014 (Id., Page ID# 397, ¶94; Page ID# 418). Subsequently, in June 2014, Douglas advised Faulkner that she would be laid off from the FPA position due to budget cuts (Id., Page ID# 397, ¶95). On July 9, 2014, Faulkner filed a Retaliation Charge with EEOC (R. 37-1, Page ID# 421).

Faulkner was not afforded due process.

### ii.    Fourteenth Amendment Equal Protection

Faulkner's Count VII sets forth a cause of action against SCSS and Douglas for violation of her Equal Protection rights, by treating her unequally, as compared to Caucasian employees, on account of her race and because she complained that Douglas discriminated against her and other African Americans (R. 37, Page ID# 402, ¶¶117-118; Id., Page ID# 410, ¶¶ 147-148).

The disparate treatment that Faulkner alleges is set forth in the following paragraphs of her Complaint: (1) Caucasian employees were issued business cards but Faulkner and the "hit list" blacks were not issued business cards (Id., Page ID# 395, ¶85).  (2) Douglas gave Bill Morris, Caucasian, who was hired at the same time as Faulkner, a hire salary (Id., Page ID# 396, ¶ 86).  (3) Douglas gave Morris a hire wage when she realized he was being paid less than Faulkner (Id., ¶87).  (4) At the time of Morris' hire and raise, he possessed fewer degrees, and had less time with the School System, in comparison to Faulkner (Id., ¶88). (5) Douglas would not issue Faulkner's assignments to her in writing but verbally; however, she issued Caucasian employees their directions and assignments in writing (Id., ¶89).

Faulkner's FPA position, like Williams', was contractual and renewable each year.  Faulkner was a tenured employee and was highly qualified and a

productive employee (R. 37, Page ID#, 394, ¶¶74-75). She had not had adverse write ups until she started working under Douglas's supervision (Id., ¶76). Prior to Douglas' supervision, Faulkner had good performance evaluations (Id., Page ID# 395, ¶80).

With this backdrop, it is reasonable for Faulkner to believe Douglas's treatment of her was disparate, because she is black and complained of racial discrimination.

### iii. Fourteenth Amendment Free Speech Retaliation

Faulkner's Count VIII sets forth a cause of action against SCSS and Douglas for violation of her First Amendment Free Speech from Retaliation (R. 37, Page ID# 402, ¶117-118; Page ID# 411, ¶¶ 149-150).

Leading to Faulkner's termination, Douglas threatened Faulkner with negative performance appraisals (Id., Page ID# 394, ¶79). Faulkner complained about the threats, and Douglas furthered the harassment by sending Faulkner an email that she had the final input on her appraisals (Id., Page ID# 395, ¶81).

Faulkner further complained to her superior, James Aldinger, that she was being discriminated against because she is black, and Aldinger reported the same to SCSS (Id., Page ID# 397, ¶93). On May 5, 2018, Faulkner filed a Charge of Discrimination complaining about the disparity in wages between her and Bill

Morris (Id., Page ID# 397, ¶94; Page ID# 418). On June 13, 2014, Faulkner was informed that she would be terminated from her FPA position due to budget cuts (Id., Page ID# 421). She filed her second EEOC discrimination charge of Retaliation on July 9, 2014.

Given the totality of Faulkner's grievances, her claim is reasonable.

### iv.    Emotional Distress

Faulkner's Count IX sets forth a cause of action against Douglas for Emotional Distress (R. 37, Page ID# 411, ¶¶ 151-153).

The cumulative actions of Douglas above caused Faulkner emotional distress (Id., Page ID# 412, ¶153). Despite Faulkner's complaints about Douglas's discriminatory practices, SCSS did not correct Douglas's conduct (Id., Page ID# 396, ¶¶91-92).

As a result of the distress, Faulkner sought medical treatment (Id., Page ID# 411, ¶153).

### v.    Wrongful Dismissal of Tenured Teacher

Faulkner's Count X sets forth a cause of action against Douglas for Wrongful Dismissal of Tenured Teacher (R. 37, Page ID# 412, ¶¶ 154-155).

Faulkner believes she was terminated on account of her race and because she complained about discrimination (Id., Page ID# 398, ¶102). Faulkner had a

substantive due process right in not being terminated from her government-contract position for a constitutionally impermissible purpose. <u>Morreim v. Univ. Of Tenn.</u>, No. 12-2891-STA-dkv, at p. 30.

Douglas's termination of Faulkner for a constitutionally impermissible purpose denied Faulkner substantive due process.

**B. Attorneys' Continuing Violations Theory**

Actions pursuant to 1983 that arise in Tennessee are subject to Tennessee's one year statute of limitations for personal injury. *T.C.A. § 28-3-104(a)(3); Jewell v. Shelby Cnty. Gov't and Oldham*, No. 13-2048-STA-dkv, p. 8 (W.D. Tenn., 2013). However, a Plaintiff may file their claim beyond the statute of limitations period.

The Sixth Circuit has described two categories of claims that constitute a continuing violation.

**1. Evidence of Present Discriminatory Activity**

The *first category* requires "evidence of present discriminatory activity giving rise to a claim of a continuing violation," for example, "where an employer continues presently to impose disparate work assignments or pay rates between similarly situated employee groups." *Dyer v. Radcliffe,* 169 F.Supp.2d 770, 778 (S.D. Ohio 2001), citing *Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991).

Dyer further cited *Hall v. Ledex, Inc.,* 669 F.2d 397, 398 (6th Cir. 1982), where the Court opined that limitations periods are triggered in response to the discriminatory acts themselves, not in response to the continuing effects of past discriminatory acts. Id., citing *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66, L.Ed.2d 431 (1980).

The Delaware Court explained:

> "The rationale underlying this category is that the employer commits an illegal act, such as giving unequal pay for equal work, each time the employer dispenses the unequal pay." Id.

In the same way, Williams and Faulkner experienced a continuing violation.

In Williams' case, Douglas hired Patty Wright and terminated Williams from her FPA position, for a constitutionally impermissible reason. Williams' termination and reassignment to a teaching position resulted in a salary decrease and loss in the effectiveness of her tenured status (R. 44-1, Page ID# 482, para. 1). Douglas created Williams' demoted pay status, and sealed her status by not rehiring Williams to one of the FPA positions that was subsequently reposted and ultimately filled (R. 44-2, Page ID# 500, ¶12). And, each day Williams worked in a demoted status and received reduced earnings, Douglas discriminated against Williams and violated her right to equal protection.

After Williams unlawful termination from her FPA position in December, 2013, she returned to SCS as a classroom teacher (R. 44-1, Page ID# 481, para 1). The decreased pay continued to the time she left SCSS. She left SCSS's employment in May 2015 (Id.). Pursuant to T.C.A. *§28-3-105*, Williams could have brought a lawsuit for the Inducement to Breach Contract as late as May 2018. For the purpose of determining when the continuing statute of limitations accrued, Attorneys looked to June 2014 being the starting date, which represents the date when Williams' contract would have legally ended (R. 44-1, Page ID 484, 3.).

Pursuant to *T.C.A. 28-3-109(a)(3)*, Williams' claim provides a six-year statute of limitations because it is a contract dispute. Therefore, Williams could have brought a lawsuit for the Inducement to Breach Contract as late as May 2021.

Williams initially filed her lawsuit on April 25, 2017.

In Faulkner's case, Douglas terminated her because she complained of disparity in pay between her and Bill Morris, Caucasian, and because she filed EEOC charges. Faulkner was also reassigned to a teaching position that resulted in a salary decrease and loss in the effectiveness of her tenured status (R. 44-1, Page ID# 482, para. 1). Douglas created Faulkner's demoted pay status, and she sealed her status, as well, by not rehiring Faulkner to one of the FPA positions that were subsequently reposted and that became available (R. 44-2, Page ID# 500, ¶12).

Additionally, Douglas did not consider Faulkner for the Federal Programs Manager position that she subsequently applied for, after she was terminated (R. 44-2, Page ID# 499, ¶¶7-9). Another individual was hired for the position (Id.). And, like Williams, each day Faulkner worked in a demoted status and received reduced earnings, Douglas discriminated against Faulkner, and her right to equal protection was violated.

After Faulkner's unlawful termination from her FPA contract in June 2014, she returned to SCS as a PLC Coach. Faulkner's decreased pay continued to the time she left SCSS. She left SCSS's employment in September 2017 (R. 44-1, Page ID# 481, para 3). Thus, pursuant to *T.C.A. 28-3-105*, Faulkner could have brought her Wrongful Dismissal of Tenured Teacher claim as late as October 2020. Pursuant to *T.C.A. 28-3-109(a)(3)*, Faulkner had up to 2023 to bring her teacher loss claim.

**ii.**     **Second category – long standing policy of discrimination**

"The second category is made up of cases where the discriminatory acts are a part of "a longstanding and demonstrable policy of discrimination." *Caldwell v. Rowland*, 932 F.Supp. 1018, 1021 (E.D. Tenn., 1996), quoting Dixon, 928 F.2d at 217.

Plaintiffs are required to provide "some evidence that there was intentional discrimination against a protected class as part of its "standard operating procedure."  Id., quoting *E.E.O.C. v. Penton Indus. Pub. Co., Inc.*, 851 F.2d 835, 838 (6th Cir. 1988).

Williams' and Faulkner's Count V sets forth that Douglas's actions were motivated by SCSS's policies and customs, that were systemic.  For example, Douglas maintained a "shit list" and "black list" of black employees who she targeted for mistreatment.  She did not issue blacks business cards.  Douglas ensured African American employees were paid less than Caucasian employees. Douglas systematically held black employees requisitions and reimbursements.

Between June 2016 and March 2017, an investigation was undertaken against Douglas (R. 44-2, Page ID# 500, ¶¶13-15).  Attorneys believed the investigation housed information relevant to Plaintiffs' claims and the issue of long standing discrimination, and Attorneys intended to show, from results of the investigation Douglas systemically violated individuals' rights of African Americans (44-1, Page ID# 484, para 2).  Plaintiffs did not successfully obtain the investigation and its findings through discovery.

### iii.    Hostile work environment continued

The hostility that Williams and Faulkner experienced as FPAs continued into their reassigned positions.  For example, a Federal Programs Manager position was posted to be filled.  In support of her interest in the position, Faulkner presented a statement to supervisor-level employees at SCS.  The statement was later altered.

After Faulkner's termination from the FPA position, she expressed her interest in the Federal Program Manager position (hereinafter, "FPM) to Sheila Redick, a supervisor-level employee at SCS, and Chantay Branch, Labor and Employee Relations Manager at SCS (R. 44-2, Page ID# 498, ¶¶2-4).   On June 18, 2014, Faulkner gave a written statement to Redick and Branch expressing her interest in the FPM position (Id.).   Additionally, she submitted her resume to Redick and Branch (Id., Page ID# 499, ¶¶5-6).  SCS subsequently tendered the document to its Department of Labor (DOL), and on November 29, 2016, DOL submitted documents to EEOC, which included the statement Faulkner submitted to Redick and Branch (R. 63, Page ID# 630, last para.).  That portion of the document that expressed Faulkner's interest in the FP Manager position had been deleted (Id.).

A second example of a continuing hostile work environment involves an incident on February 2, 2017, when Faulkner sent Chantay Branch an email inquiring about her rights following the Tennessee Federal Court ruling affirming key tenure rights of teachers (R. 44-4, Page ID# 506; R. 63, Page ID# 631, para 3). Branch did not respond to Faulkner's request nor did SCS otherwise counsel Faulkner regarding her rights (Id.).

Attorneys believe the 2016/2017 investigation against Douglas would have revealed material information relative to a continuing hostile environment as well.

**ISSUE II:** **The District Court Abused Its Discretion in Awarding Attorney Fees To Douglas Because Plaintiffs' Claims Were Not Frivolous, Unreasonable Or Without Foundation.**

The District Court's conclusion that Plaintiffs' Attorneys needlessly and knowingly and intentionally multiplied the proceeding, awarding attorneys' fees to Douglas (R. 163, Page ID# 1247 and 1251), is error.

Section 1988(b) states in relevant part: "In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title…the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs…" 42 U.S.C. § 1988(b).

An award of attorney fees against a losing plaintiff in a civil rights action "is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Riddle v. Egensperger*, 266 F.3d at 542, citing *Jones v. The Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986). "A prevailing defendant should only recover upon a finding by the district court that 'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994), quoting *Christiansburg*, 434 U.S. at 421.

Section 1927 sanctions are warranted when an attorney objectively "falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Ruben v. Warren City Sch., 825 F.2d 977, 984* (6th Cir. 1987). The purpose is to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy. See *Jones v Continental Corp.*, 789 F.2d at 1230-31. Section 1927 sanctions require a showing of something less than subjective bad faith, but something more than negligence or incompetence. See In Re Rubin, 825 F.2d at 984.

Thus, an attorney is sanctionable when he intentionally abuses the judicial process or knowingly disregards the risk that his actions will needlessly multiply proceedings. See *United States v. Wallace*, 964 F.2d 1214, 1220 (D.C. Cir. 1992).

The record does not support the District Court's award of sanctions against Attorneys.

**A.     The District Court Relied On Erroneous Findings of Facts and Improperly Applied The Law Or Used An Erroneous Legal Standard.**

In awarding attorneys' fees sanctions against Attorneys, the Court wrote the following:

> …The Court found that none of the claims against Douglas could withstand the motion to dismiss. As a result, Plaintiffs' attorneys' actions constituted a needless multiplication of the proceedings."   (R. 163, Page ID# 1247).

This is error.

The fact that the District Court concluded Williams' and Faulkner's 1983 Complaint failed to state a claim does not necessarily support the conclusion that their claims were frivolous, unreasonable, or groundless, warranting attorneys' fees sanctioning.  *Riddle v. Egensperger*, 266 F.3d at 551. And Attorneys' continuing violations theory, although the District Court found without merit, it was not reckless, unreasonable, or vexatious conduct.  Even the District Court's Order granting Douglas's Motion to Dismiss, did not find Plaintiffs' 1983 lawsuit was frivolous, unreasonable, or groundless.  Neither did it find bad faith was involved.

The District Court continued its reasons for awarding attorneys' fees sanctions:

> "It is worth pointing out that this award represents an expense to Douglas which she would not have incurred but for the vexatious nature of this litigation spurred on by Plaintiffs' attorneys. The actions of Ms. Vie and Ms. Jones amount to more than negligence or incompetence. They knowingly and intentionally multiplied these proceedings to grind down Douglas, resulting in a needless multiplication of these proceedings" (R. 163, Page ID#, 1251).
>
> The record does not support this.

Other than finding Plaintiffs' Attorneys were unable to make a good faith argument for application of the continuing violations doctrine, as the basis for finding the 1983 lawsuit was frivolous, the Court did not identify discreet acts of vexatious conduct by Attorneys. "Discreet acts of vexatious conduct should be identified and a determination made whether they were done in bad faith or, even if bad faith was not present, whether they multiplied the proceedings pursuant to 28 U.S.C. § 1927." Riddle v. Egensperger, 266 F.3d at 556.

The record shows Attorneys engaged in normal vigorous advocacy on behalf of Williams and Faulkner and not vexatious conduct.

**B.** **The District Court Disregarded Material Facts In The Record That Are Probative To the Issue of Multiplication and Vexation of Litigation.**

The Court found that the period Attorneys multiplied the proceeding began on October 17, 2017 when Attorneys responded to Douglas's Motion to Dismiss (R. 163, Page ID# 1247). Its conclusion that Attorneys grind down Douglas, resulting in a needless multiplication of the proceedings, (R. 163, Page ID#, 1251),

is not accurate and is not supported in the record. See the parties' discovery comparisons, concerning Douglas's Motion to Dismiss:

*Plaintiffs' Discovery to Douglas*

1.      On October 17, 2017, Plaintiffs responded to Douglas's Motion to Dismiss, which totaled 15 pages (R. 44-1, Page ID# 480-508).

2.      On October 30, 2017, Plaintiffs propounded one (1) Interrogatory Request  and one (1) Production of Documents Request to Douglas (R. 47, Page ID# 513-514; R. 48, Page ID# 515-516).

3.      On January 30, 2018, Plaintiffs filed the six-page Emergency Motion for Protective Order (R. 74, Page ID# 653-664).

*Douglas's Discovery to Plaintiffs*

1.      On September 21, 2017, Douglas propounded her Requests for Production of Documents to Williams and Faulkner (R. 41, Page ID# 431).

2.      On January 23, 2018, Douglas propounded the 190 Admissions to Williams (R. 68, Page ID#, 641-642).

3.      On January 24, 2018, Douglas propounded the 137 Admissions to Faulkner (R. 71, Page ID# 649-650).

4.      On January 23, 2018 Douglas noticed Plaintiffs for their video-taped depositions (R. 69 and 70).

5.     Douglas's attorney and SCSS's attorney deposed Plaintiffs over a four (4) day period in Memphis, Tennessee, on March 12, 13, 14, and 15 of 2018.

Douglas's Admissions requests and depositions were unnecessary, and they were over-kill.   The parties had limited the Admissions to 35, pursuant to the Report of Parties' Planning Meeting (R. 25, Page ID# 248).     In fact, Douglas's attorney agreed in the January 29, 2018 email between her and the undersigned that the parties stipulated to the 35 limit (R. 74, Page ID# 659):

> Attorney Jones:
> Ms. Rasmussen, on July 24, 2017, the attorneys held a Planning Meeting and stipulated that Admissions would be limited to 35 (Doc. 25).   Your 190 Admission to Ms. Williams and 137 Admissions to Ms. Faulkner exceed the number.
>
> Please amend your Admissions accordingly.
>
> Attorney Rasmussen:
> Ms. Jones, You are correct.   However, I will not amend the request for admissions.   You are free to make whatever objections you so desire.

Judge Charmiane G. Claxton, Magistrate Court, denied Plaintiffs' Motion on the ground "there is no indication that Defendant Douglas agreed to be bound to the 35 request for admissions limit that was set in the Rule 26(f) meeting" (R. 95, Page ID# 788).

Attorneys answered the 327 Admissions in a timely manner.

While Federal Rule of Civil Procedure 30(d)(1) permits an attorney to depose a witness up to 7 hours per day, two law firms deposing Williams and Faulkner over a 4-day period was unreasonable and unnecessary.  Plus, the video-taped depositions further escalated costs.  The costs Attorneys incurred travelling from Georgia and Michigan to appear at the depositions and the five-night overstay were unnecessarily burdensome.

The District Court unfairly characterized Attorneys discovery activity as unnecessary multiplication of the proceedings and vexatious, disregarding Douglas's attorneys' protracted activities.  Also, Douglas's attorneys did not mitigate their damages.  The District Court disregarded this, as well.

## III.    The Process The District Court Undertook In Reaching Its Findings Was Unfair To Plaintiffs

The Court concluded that Plaintiffs' 1983 claim was "obviously time-barred" (R. 163, Page ID# 1240).  That being the case, it seems, in the interest of fairness and judicial economy, alone, the District Court would have rendered its judgment dismissing the 1983 claim earlier.

It appears Douglas's Motion to Dismiss became ripe for the District Court's review as early as October 30, 2017, the date Douglas replied to Plaintiffs' response to her Motion to Dismiss (R. 49, Page ID# 517).  Three months later, on January 23, 2018 and January 24, Douglas propounded the 327 Admissions.  And

five months later, on March 12, 2018 through March 15, 2018, Douglas's attorney and SCSS's attorney deposed Plaintiffs.

The District Court's delay in ruling on Douglas's Motion to Dismiss, in light of its belief that Plaintiffs' Complaint was "obviously time-barred" and its sanctioning of Attorneys for multiplication of proceedings is not fair because its delay paved the way for Douglas's protracted approach to discovery. See *Riddle v. Egensperger*, 266 F.3d at 556, where the Appellate Court found the District Court erred in sanctioning Plaintiff where it was aware of multiple acts of misconduct but never warned the attorneys. *Id.* Respectfully, in the same way, the District Court erred in sanctioning Attorneys for multiplication and vexatious litigation, where it contends the 1983 lawsuit was "obviously time-barred but permitted the lawsuit to continue.

## SUMMARY AND RELIEF

The District Court is not justified in awarding attorneys' fees sanctions against Attorneys because the law and facts demonstrated, herein, do not support the District Court's award of attorneys' fees. Additionally, the District Court's delayed ruling on the Motion to Dismiss was unfair.

Attorneys respectfully pray that this Court overturn the District Court's finding that Plaintiffs' lawsuit was frivolous and its award of attorneys' fees to Douglas.

Respectfully submitted this 13th day of May, 2019.

/s/Lucinda Jones
Lucinda Jones
Michigan Bar No. P81484
P.O. Box 442111
Detroit, Michigan  48244
313-559-5444
advocate.lucinda@gmail.com

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the type-volume limitation provided in F.R.A.P. 32(a)(7)(B). The foregoing principal brief contains 9,682 words and is typed in Times New Roman (proportional) 14-point type. The word processing software used to prepare this brief was Microsoft Word 2007 for Windows.

Submitted this 13th day of May, 2019.

/s/Lucinda Jones
Lucinda Jones
Michigan Bar No. P81484
P.O. Box 442111
Detroit, Michigan 48244
313-559-5444
advocate.lucinda@gmail.com

## CERTIFICATE OF SERVICE

This certifies that I have this day served Appellants' Appellate Brief, with the Clerk of the Sixth Circuit Court of Appeals using the CM/ECF system, which will send notification of such filing to the following attorney of record

Robert O. Binkley, Jr.
Jennifer V. Ivy
Rainiey, Kizer, Reviere & Bell, P.L.C.
209 East Main Street
Jackson, TN  38301

Submitted this 13th day of May, 2019.

/s/Lucinda Jones
Lucinda Jones
Michigan Bar No. P81484
P.O. Box 442111
Detroit, Michigan 48244
313-559-5444
advocate.lucinda@gmail.com

# DESIGNATION OF RECORD

| Record Entry Number | Description of Entry | Date Document Entered | Page ID Number |
|---|---|---|---|
| 1 | Complaint Under Title VII Of The Civil Rights Act Of 1964 And 42 U.S.C. 1981 | 04/25/17 | 1-40 |
| 25 | Report of Parties' Planning Meeting | 08/02/17 | 248-250 |
| 26 | Notice of Appearance by Robin H. Rasmussen On Behalf Of Marjorie N. Douglas | 08/14/17 | 253 |
| 28 | Telephonic Scheduling Conference | 08/14/17 | No ID# Minute Entry |
| 32 | Scheduling Order | 08/17/17 | 324-327 |
| 37 | Third Amended Complaint Under Title VII Of The Civil Right Act Of 1964 And 42 U.S.C. 1983 Deprivation Of Civil Rights | 09/19/17 | 381-425 |
| 41 | Notice by Marjorie N. Douglas of Service of Discovery | 09/21/17 | 431 |
| 42-1 | Memorandum In Support Of Motion To Dismiss Of Defendant Marjorie N. Douglas Pursuant To F.R.C.P. 12(b)(6) | 10/03/17 | 435-449 |
| 43 | Shelby County Board Of Education Answer And Affirmative Defenses To Plaintiffs' Third Amended Complaint | 10/03/17 | 450-475 |
| 44-1 | Response To Defendant Marjorie Douglas' Motion To Dismiss Pursuant To F.R.C.P. 12(b)(6), And Brief In Support Thereof | 10/17/17 | 480-508 |
| 47 | Certificate of Service – First Interrogatories to Marjorie Douglas from Demetri Faulkner | 10/30/17 | 513-514 |
| 48 | Certificate of Service – First Request | 10/30/17 | 515-516 |

| | | | |
|---|---|---|---|
| | for Production of Documents to Marjorie Douglas from Katoria S. Williams | | |
| 49 | Reply Of Marjorie N. Douglas To Response To Motion To Dismiss | 10/30/17 | 517-526 |
| 63 | Reply To Defendant Shelby County Board Of Education's Response In Opposition To Plaintiffs" Motion To Compel Discovery | 01/12/18 | 626-634 |
| 65 | Notice by Marjorie N. Douglas To Take Deposition of Katoria S. Williams | 01/22/18 | 635-636 |
| 66 | Notice by Marjorie N. Douglas To Take Deposition of Demetri M. Faulkner | 01/22/18 | 637-688 |
| 68 | Notice by Marjorie N. Douglas of First Request for Admissions to Katoria S. Williams | 01/23/18 | 641-642 |
| 69 | Notice by Shelby County Board of Education Notice To Take Deposition of Plaintiff Demetri Faulkner | 01/23/18 | 643--644 |
| 70 | Notice by Shelby County Board of Education Notice To Take Deposition of Plaintiff Katoria Williams | 01/23/18 | 646-648 |
| 71 | Notice by Marjorie N. Douglas of Service of First Request for Admissions to Demetri M. Faulkner | 01/24/18 | 649-650 |
| 74 | Emergency Motion For Protective Order | 01/30/18 | 653-664 |
| 83 | Amended Scheduling Order | 02/21/18 | 707-709 |
| 86 | Certificate of Service by Demetri M. Faulkner | 02/14/18 | 715-716 |
| 87 | Certificate of Service by Katoria S. Williams | 02/14/18 | 717-718 |
| 94 | Transfer Order | 02/26/18 | 786 |
| 95 | Order Denying Plaintiff' Emergency Motion for Protective Order | 02/26/18 | 787-788 |

| 108 | Order Granting Defendant Marjorie N. Douglas's Motion To Dismiss | 05/02/18 | 820-833 |
|---|---|---|---|
| 109 | Notice of Appearance by Robert O. Binkley, Jr. on behalf of Douglas | 05/16/18 | 834-835 |
| 110-1 | Memorandum Of Law In Support Of Defendant Marjorie N. Douglas's Motion For Attorney's Fees And Expenses | 05/16/18 | 839-850 |
| 118 | Response To Defendant Marjorie N. Douglas's Motion For Attorney's Fees And Expenses | 05/29/18 | 875-882 |
| 122 | Notice of Appearance by Darrell J. O'Neal on behalf of All Plaintiffs | 06/26/18 | 890-891 |
| 123 | Stipulation Voluntary Dismissal of Plaintiffs' 1983 – Fourteenth Amendment Due Process Claims | 06/27/18 | 892 |
| 140 | Joint Stipulation of Dismissal | 08/28/18 | 1118-1120 |
| 144 | Plaintiffs' Supplemental Response In Opposition to Defendant Marjorie N. Douglas's Motion For Attorneys Fees And Expenses | 09/14/18 | 1128-1139 |
| 148 | Status Conference | 10/03/18 | No ID# Minute Entry |
| 151 | Telephonic Status Conference | 11/13/18 | No ID# Minute Entry |
| 153 | Sealed Document Notice of Service Of Billing Statements | 11/14/18 | Includes 34 pages |
| 154 | Sealed Document Supplemental Notice of Filing Additional Billing Statements | 11/14/18 | Includes 6 pages |
| 155 | Plaintiffs' Objections To Marjorie N. Douglas' Attorney Fee Request As Unreasonable, And A Request To Stay This Matter Pending A Ruling Of The Constitutionality Of T.C.A. §29-20-113 | 11/30/18 | 1198-1203 |
| 158 | Plaintiffs' Memorandum In Support | 12/15/18 | 1212-1225 |

| | | | |
|---|---|---|---|
| | Of Their Notice Challenging The Constitutionality of T.C.A. §29-20-113 | | |
| 163 | Order Granting In Part And Denying In Part Defendant's Motion For Attorney's Fees And Expenses And Denying Plaintiffs' Motion To Certify Constitutionality Of Tenn. Code Ann. §29-20-113 | 02/07/19 | 1239-1256 |
| 166 | Notice Of Appeal | 03/11/2019 | 1294 |